IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CORTEZ SHIELDS (R-29648), | |
| Petitioner, | Case No. 21 C 2034 |
| v. | Honorable Sunil R. Harjani |
| BRITTANY GREENE, in her capacity as Warden of Western Illinois Correctional Center, | |
| Respondent. | |

## MEMORANDUM OPINION AND ORDER

Petitioner Cortez Shields is serving consecutive prison terms of sixty and twenty years for first degree murder and aggravated battery, respectively, for shooting a firearm into a group of people, killing one and injuring another. Petitioner is currently in the custody of Respondent Brittany Greene, the Warden of Western Illinois Correctional Center.[1] Presently before the Court is Petitioner's writ of habeas corpus petition pursuant to 28 U.S.C. § 2254. For the reasons stated below, the Court denies the Petition and declines to issue a certificate of appealability.

---

[1] Petitioner first filed his federal habeas petition against the Attorney General of the State of Illinois. Pursuant to Federal Rule of Civil Rule 25, the Court orders substitution of the proper defendant who is the person having custody of the person detained. Fed. R. Civ. P. 25(d); *see Bridges v. Chambers*, 425 F.3d 1048, 1049-50 (7th Cir. 2005); Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts. Here, that is Brittany Greene in her capacity as Warden of Western Illinois Correctional Center. Thus, the Attorney General of the State of Illinois is dismissed.

## Background[2]

On July 28, 2005, Petitioner was indicted with twelve counts of first-degree murder, one count of attempted first-degree murder, and one count of aggravated battery with a firearm. R. Ex.[3] 3 at 4 (*citing* R. Ex. 2 at C22-36). The State of Illinois *nolle prosequi* all counts except two counts for the first-degree murder of Gregory Boarden and one count of aggravated battery with a firearm involving Levelle Hicks. *Id.* (*citing* R. Ex. 1 at LL8). All charges arose from a shooting on the evening of October 23, 2004. *Shields I*, R. Ex. 6 at 1.

### I.     Trial and Post-Trial Proceedings

On July 18, 2008, a jury found Petitioner guilty of first-degree murder and aggravated battery with a firearm. R. Ex. 1 at PP11-15; R. Ex. 2 at C112-115. During the jury trial, witnesses for the State testified that Petitioner shot Hicks in the thigh causing him to be hospitalized for two days. *Shields I*, R. Ex. 6 at 3. Witnesses also testified that they saw Petitioner shoot Boarden multiple times in the chest. *Id.* at 2-5. The State also introduced tape recordings of a telephone conversation between Petitioner and his brother who was in custody at Graham Correctional Center. *Id.* at 4. That conversation included Petitioner telling his brother that he intended to claim that he did not hear about the shooting until the next day. *Id.* at 4-5. When confronted with this evidence in an interview, Petitioner screamed that he did not want to go to jail, and that evidence

---

[2] In reviewing a petition for federal habeas corpus, the Court must presume that the state court's factual determinations are correct unless Petitioner rebuts those facts by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Weaver v. Nicholson*, 892 F.3d 878, 881 (7th Cir. 2018). Petitioner does not challenge any of the underlying facts in his Petition. The Court therefore adopts the recitation of the facts set forth in the Illinois Appellate Court's order denying Petitioner's direct appeal of his conviction, *People v. Shields*, No. 1-09-0281 (Ill. App. Ct. Nov. 15, 2010) (*Shields I*), and the Illinois Appellate Court's order denying Petitioner's postconviction appeal, *People v. Shields*, 2020 IL App (1st) 170107-U (Sept. 30, 2020) (*Shields II*). The facts regarding the procedural history of this case come from the Petition and the state court record that Respondent provided pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts.

[3] Citations to the habeas record that Respondent provided (Doc. [26]) pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts are noted as "R. Ex."

was also introduced at trial. *Id.* The jury found Petitioner guilty on both counts. *Id.* at 5. After trial, Petitioner filed a *pro se* handwritten motion to reduce the charged offense. *Id.* at 5. In that motion, Petitioner challenged the sufficiency of the trial evidence, argued the trial court erred by not instructing the jury on the lesser included offense, stated that he was unfit to stand trial based on a learning disability, and contended that trial counsel was ineffective for not investigating the learning disability and seeking a fitness evaluation. R. Ex. 2 at C55-64. At a subsequent sentencing hearing, the court refused to rule on this motion as Petitioner was represented by counsel. *Shields I*, R. Ex. 6 at 5; *Shields II*, R. Ex. 14 at 5. Petitioner was sentenced to consecutive sentences of 60 years for first-degree murder and 20 years for aggravated battery with a firearm. *Shields II*, R. Ex. 14 at 6. Petitioner's counsel then filed a motion to reconsider Petitioner's sentence based on evidence regarding fitness, including what Petitioner had included in the earlier *pro se* motion filed on Petitioner's behalf by a relative and school records indicating a moderate disability of "educable mentally handicapped." *Id.* The trial court inquired with defense counsel if there was any indication that defendant was unfit, to which counsel replied that they had no indication based on prior lengthy discussions surrounding pleas and defenses. *Id.* at 7. Counsel for Petitioner requested a behavioral clinic examination to determine fitness, which was granted but not completed based on a lack of cooperation from the Petitioner. *Id.* at 6-7. The trial court ultimately denied the motion to reconsider Petitioner's sentence. *Id.* at 7.

## II. Direct Appeal

On direct appeal, with the assistance of counsel, Petitioner argued that trial counsel failed to conduct a *People v. Krankel* inquiry. 102 Ill. 2d 181, 189 (1984). Specifically, Petitioner asserted that the trial court should have held a *Krankel* hearing on whether trial counsel was ineffective for failing to offer a lesser offense jury instruction and failing to investigate Petitioner's fitness to

3

stand trial. *Shields II*, R. Ex. 14 at 7-8. The Illinois Appellate Court affirmed the conviction and concluded that a *Krankel* hearing was not required. *Id.* at 8. The court in *Shields I* noted that the trial court considered the issue of fitness on Petitioner's motion to reconsider, including his school records. *Shields I*, R. Ex. 6 at 12. The Illinois Appellate Court observed that Petitioner "was provided the opportunity to establish his conclusory allegation that he suffered from a learning disability preventing him from comprehending the court proceedings but refused to cooperate with [the behavioral exam]." *Shields II*, R. Ex. 14 at 8 (*citing Shields I*, R. Ex. 6 at 13). The reviewing court also noted that the *pro se* motion undercut Petitioner's claim because it established that he understood what occurred in court and thus suffered no disability. *Id.*

### III. Postconviction Proceedings

In January 2012, Petitioner filed a *pro se* postconviction petition alleging, among other arguments, ineffective assistance of trial counsel for failing to investigate fitness to stand trial. *Id.* In January 2016, Petitioner, through postconviction counsel, filed a supplemental petition asserting: (1) denial of due process based on Petitioner being prosecuted while unfit; and (2) ineffective assistance of trial counsel for failing to investigate the mental capacity of Petitioner. *Id.* at 9. The filing also noted appellate counsel improperly stated that Petitioner filed his own *pro se* posttrial motion, which prejudiced his appellate claims. *Id.* Petitioner's filing included sixteen supplemental exhibits, including a 2014 report from clinical psychologist Dr. Klug that Petitioner was not competent to stand trial in 2008. *Id.* The report detailed that Petitioner had "impaired short term memory, marginal long term memory, poor reasoning and abstract thinking, inability to read above the third grade level, and a full scale IQ of 46." *Id.* (cleaned up). Based on Petitioner's intellectual functioning, Dr. Klug concluded that he was unable to understand the legal process and was unfit. *Id.* Dr. Klug also gave an opinion that Petitioner was not malingering. *Id.* The

4

additional evidence also included an affidavit from an individual attesting that Petitioner received Social Security benefits for his intellectual disability, that Petitioner has had "difficulties learning" since he was a child, and that she had raised Petitioner's issues with his trial counsel. *Id.* at 10. The evidence also included Chicago public school records, records from a hospital admission at age 13, a Cook County juvenile fitness evaluation, and juvenile court social investigations from 1997 and 1999. *Id.*

The State moved to dismiss the postconviction petition arguing that Petitioner failed to satisfy his burden under *Strickland v. Washington*, 466 U.S. 668 (1984), and that defendant was not denied due process. *Id.* at 10. Following a hearing, the postconviction trial court granted the motion to dismiss holding that while a psychologist's report indicating a person was unfit is often enough to merit an evidentiary hearing, the overall record in this case did not support Petitioner's claim. *Id.* at 11. The postconviction trial court relied on the evidence that Petitioner crafted an alibi and that there was no indication to trial counsel or the court that Petitioner was unfit. *Id.* The Illinois Appellate Court reviewed the postconviction dismissal and affirmed. *Id.* at 11-30. On January 27, 2021, the Illinois Supreme Court denied the petition for leave to appeal. R. Ex. 16.

## Discussion

Petitioner argues two intertwined points: (1) that Petitioner's right to due process was violated when he was tried while unfit; and (2) that trial counsel was ineffective for failing to investigate Petitioner's fitness. Both contentions lack merit.

### I. AEDPA

Under the Antiterrorism and Effective Death Penalty (AEDPA), federal courts may grant habeas relief only if the state court's decision "was adjudicated on the merits in State court proceedings," unless the adjudication "was contrary to, or involved an unreasonable application

5

of, clearly established Federal law," or "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d). As outlined by the Seventh Circuit, a decision is "contrary to" federal law, if the state court either incorrectly applied United States Supreme Court precedent or decided opposite to a materially factually indistinguishable Supreme Court case. 28 U.S.C. § 2254(d)(1); *Sutherland v. Gaetz*, 581 F.3d 614, 616 (7th Cir. 2009). An "unreasonable application" of United States Supreme Court precedent transpires when the state court decision lies "well outside the boundaries of permissible differences of opinions." 28 U.S.C. § 2254(d)(1); *Conner v. McBride*, 375 F.3d 643, 649 (7th Cir. 2004). Further, factual determinations of a state court are presumed reasonable unless a petitioner can show otherwise by clear and convincing evidence. 28 U.S.C. § 2254(d)(2); *McBride*, 375 F.3d at 649.

The Illinois Appellate Court initially refused to reach the merits of Petitioner's renewed attempt to raise an ineffective assistance of counsel claim, concluding it was barred by the application of *res judicata* in accordance with the procedural requirements of the Illinois Post Conviction Hearing Act. *Shields II*, R. Ex. 14 at 14-17. A usual consequence of the Illinois postconviction court's *res judicata* finding for AEDPA deference is that this Court's review should be limited to the last decision to review the merits of the claim, the Illinois Appellate Court in *Shields I* on direct appeal. *Sutherland*, 581 F.3d at 616. Respondent takes the position that *Shields I* should be reviewed for the merits of the ineffective assistance of counsel claim and *Shields II* should be reviewed for the merits of the due process claim. However, Respondent also argues that if the Court were to review *Shields II* for the merits of both claims, the adjudication was reasonable and subject to deference under 28 U.S.C. § 2254(d) because the correct precedent was utilized. Petitioner takes no stance regarding which decision should be reviewed, nor does he challenge whether the AEDPA deference under 28 U.S.C. § 2254(d) applies, and thus he waives any

6

argument on that matter. *Rock Hemp Corp. v. Dunn*, 51 F.4th 693, 704 (7th Cir. 2022) ("perfunctory and undeveloped arguments, as well as arguments that are unsupported by pertinent authority, are waived.").

Regarding which decision reached the merits, the Seventh Circuit noted in *McBride* that when a postconviction court considers an "issue fully on its merits, apparently unrestricted by any confining standards of review, took into account all old and new evidence, as presented by both the state and [Petitioner]," then the court should focus the AEDPA analysis "solely upon the factual findings and conclusions of the post-conviction court." 375 F.3d at 649 n.3. Here, the *Shields II* court did not stop after applying *res judicata* to the ineffective assistance of counsel claim but continued its analysis because Petitioner also argued that the bar of *res judicata* was overcome due to new evidence of unfitness, which also overlapped with the due process claim. *Shields II*, R. Ex. 14 at 17. Thus, the postconviction court reached the merits for both the ineffective assistance of counsel and due process claims as a result of these intertwined arguments, and also considered the new evidence presented.[4] Furthermore, the postconviction court properly laid out the *Strickland* test for the ineffective assistance of counsel and the *bona fide* doubt standard for the due process competency claim in accordance with Supreme Court precedent. Petitioner does not contest these standards used in *Shields II*.

As a result, the AEDPA mandates this Court to look only at whether *Shield II*'s application of *Strickland* and the *bona fide* doubt standard were "unreasonable." *See McBride*, 375 F.3d at 657; *Gilbreath v. Winkleski*, 21 F.4th 965, 981 (7th Cir. 2021); *Sturgeon v. Chandler*, 552 F.3d 604,

---

[4] The Seventh Circuit held in *Lee v. Kink* that a state court's refusal to consider new evidence can render its decision unreasonable under § 2254(d)(2) even when its legal analysis satisfies § 2254(d)(1). 922 F.3d 772, 774 (7th Cir. 2019). Here, the decision is not unreasonable because *Shields II* considered the additional evidence.

7

612 (7th Cir. 2009). This is a highly deferential standard which requires district courts to find that the postconviction determination was "outside the boundaries of permissible differences of opinion and/or def[ied] characterization as merely minimally consistent with the facts and circumstances of the case." *McBride*, 375 F.3d at 657 (cleaned up).

## II. Due Process

The Court first analyzes whether Petitioner's right to due process was violated when he was tried while unfit. "The test for fitness or competency to stand trial is whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him." *Newman v. Harrington*, 726 F.3d 921, 928 (7th Cir. 2013) (cleaned up). This standard is mirrored in Illinois law. *Id.*; 725 ILCS 5/104-10. Petitioner argues that the additional evidence submitted on postconviction appeal, including the psychologist's report that Petitioner was unfit at the time of trial, exhibited a substantial reason to doubt his competency and that Petitioner was entitled to a postconviction evidentiary hearing. Respondent retorts that the fitness claim: (1) was procedurally defaulted on independent and adequate state-law grounds; and (2) fails on the merits because Petitioner did not show a *bona fide* doubt he was unfit to stand trial.

### A. Procedural Default

When a state court refuses to reach the merits of a petitioner's federal claims because they were not raised in accordance with the state's procedural rules, the decision rests on independent and adequate state procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 730 (1991); *Kaczmarek v. Rednour*, 627 F.3d 586, 591 (7th Cir. 2010). In habeas review, this is an affirmative defense that the State must raise or waive. *Kaczmarek*, 627 F.3d at 591. For the state law ground to be "adequate," it must be firmly established and regularly followed at the time of the procedural

8

default. *Richardson v. Lemke*, 745 F.3d 258, 271 (7th Cir. 2014). The rule must also be actually relied on when disposing of a petitioner's claim to be independent. *Id.* at 269.

Here, Respondent contends that the issue of Petitioner's fitness is defaulted because the Illinois Appellate Court held that Petitioner forfeited his consideration of whether there was a *bona fide* doubt to his fitness by failing to support it with citations to relevant authority, as required by Illinois Supreme Court Rule 341(h)(7). *Shields II*, R. Ex. 14 at 23. Rule 341(h)(7) is a "well-settled Illinois rule which prevents state courts from considering undeveloped" claims. *Ehlers v. Lemke*, 2014 WL 1686205, at *10 (N.D. Ill. Apr. 29, 2014); *Woods v. Chandler*, 2007 WL 3034427, at *2 (N.D. Ill. Oct. 16, 2007). The Illinois Appellate Court on postconviction appeal relied on the fact that Petitioner had "failed to cite relevant authority regarding the consideration of a *bona fide* doubt as to his fitness and offer argument as to those factors." *Shields II*, R. Ex. 14 at 23. Thus, the Appellate Court held Petitioner's due process claim forfeited. *Id.* This provides a separate basis, not interwoven with federal law, to dismiss the case which the Illinois Appellate Court relied upon at the time of Petitioner's trial and a ground that was regularly followed. *Ehlers*, 2014 WL 1686205, at *11. The Court also notes that Petitioner completely fails to respond to this challenge by the Respondent and thus waives any counterargument. *Rock Hemp*, 51 F.4th at 704.

A court can excuse a petitioner's procedural default if the petitioner shows that: (1) there is a fundamental miscarriage of justice; or (2) cause for the default and resulting prejudice. *Coleman*, 501 U.S. at 749-50. Petitioner does not address either of these points and any argument is again waived. *Rock Hemp*, 51 F.4th at 704. Regardless, neither prong is met. A fundamental miscarriage of justice occurs when a petitioner convinces the court that no reasonable trier of fact would have found him guilty. *Bolton v. Akpore*, 730 F.3d 685, 697 (7th Cir. 2013). Petitioner does not argue or put forth facts that show he is actually innocent. On the second option for excusing

9

procedural default, Petitioner has not shown cause for the default or resulting prejudice. Petitioner's current ineffective assistance of counsel claim asserts that trial counsel failed to investigate Petitioner's intellectual disability and fitness. There is no claim before this Court asserting ineffective assistance of postconviction appellate counsel and no evidence has been put forward that there was cause for the procedural default of the due process claim and resulting prejudice. Thus, the due process claim is procedurally defaulted.

### B. Merits

Setting aside the procedural forfeiture, the Illinois Appellate Court also found there was no *bona fide* doubt as to Petitioner's fitness claim based on the merits. *Shields II*, R. Ex. 14 at 17-25. Factors an Illinois trial court considers regarding whether there is a *bona fide* doubt of fitness includes: (1) a defendant's behavior; (2) a defendant's demeanor; (3) prior medical opinions regarding competency; and (4) representation by counsel on competency. *Id.* at 17. This mirrors the federal standard, which inquires if there was a reasonable probability Petitioner was unfit to stand trial. *U.S. ex rel Snyder v. Sternes*, 201 F. Supp. 2d 853, 860 (N.D. Ill. Apr. 26, 2002). A *bona fide* or reasonable concern arises when there are facts that raise a "real, substantial and legitimate doubt as to [defendant's] mental capacity to meaningfully participate in his defense and cooperate with counsel." *Shields II*, R. Ex. 14 at 18 (*citing People v. Eddmonds*, 143 Ill. 2d 501, 518 (1991)). Again, the review is deferential and factual determinations are presumed correct unless rebutted by clear and convincing evidence. *Sturgeon*, 552 F.3d at 612.

The postconviction appellate panel reviewed the report from Dr. Klug that was prepared six years after Petitioner's trial and that found him unfit at the time of trial. *Shields II*, R. Ex. 14 at 18-25. Citing *People v. Easley*, the postconviction court found that a psychiatrist report from six years after trial, procured by postconviction counsel, did not raise a *bona fide* doubt as to fitness.

10

*Shields II*, R. Ex. 14 at 20-22 (*citing* 192 Ill. 2d 307 (2000)). *Easley* included similar facts, including a failed attempt at an evaluation during the trial stage, irrational comments during trial, followed by a psychological examination completed six years after the verdict which indicated longstanding mental problems affecting the defendant's ability to understand. 192 Ill. 2d at 322-23. The Illinois Supreme Court in *Easley* found the report to not necessarily raise a *bona fide* doubt as to fitness because even with mental impairments, a defendant can still be able to understand the proceedings against them and cooperate with counsel in his defense. *Id.* at 323.

The postconviction court's analysis, particularly in light of *Easley*, was not unreasonable. The postconviction court reviewed the trial and direct appeal proceedings and whether Petitioner was capable of aiding in his defense. Petitioner conceded he did not engage in irrational behavior and his demeanor did not signal a concern with fitness. *Shields II*, R. Ex. 14 at 23. Both trial counsel and the trial court judge stated on the record there was no indication Petitioner was unfit. *Id.* Once fitness was raised to counsel by showing school records and consulting with family and friends, a behavioral examination was conducted but was unable to yield any results based on Petitioner's lack of cooperation. *Id.* at 6, 23. After the failed behavioral examination, the trial judge directly asked Petitioner if he would participate if a new behavioral exam was ordered and the Petitioner said no. *Id.* at 7. The trial court also noted that Petitioner fabricated an alibi based on the admitted phone records. *Id.* at 24. On direct appeal, the court also addressed the issue by noting that the trial court had considered Petitioner's argument about mental deficiency, the public-school records indicating a moderate educable mental handicap, outside testimony that Petitioner was mentally impaired, and counsel's testimony about Petitioner's ability to discuss issues relating to his case. *Shields I*, R. Ex. 6 at 12-13.

After reviewing the trial court and direct appeal record, the postconviction appellate opinion turned to the additional evidence presented by Petitioner. The reviewing court noted that the medical records Petitioner provided were not sufficient to establish a *bona fide* doubt as to his fitness at the time of trial. *Shields II*, R. Ex. 14 at 24. First, the Appellate Court reviewed the medical records indicating Petitioner was hospitalized at age 13 in Hartgrove Hospital in 1997 which occurred seven years before the offense. *Id.* at 13, 24. The Court weighed these medical records along with a competency evaluation from a juvenile armed robbery charge, where defendant was found incompetent to stand trial. *Id.* at 24. The Appellate Court did note Petitioner was ultimately found fit for disposition in that case and found delinquent. *Id.* at 24-25. This juvenile report also noted that Plaintiff was found incompetent to stand juvenile trial two years earlier for a residential burglary charge. *Id.* at 24. However, none of the records for the residential burglary competency evaluation were included in Petitioner's submission. *Id.* The Appellate Court went on to note that juvenile court records were included in Petitioner's presentence investigation report presented before the trial court. *Id.* Petitioner's presentence investigation report included five additional prior criminal dispositions. *Id.* The prior convictions included charges for: (1) possession of narcotics; (2) possession of cannabis; (3) soliciting unlawful business; (4) possession of a controlled substance; and (5) battery causing bodily harm. *Id.* at 24-25. There was no indication that Petitioner was unfit for any of these proceedings. *Id.* at 25. The postconviction court found that the bulk of evidence relating to Petitioner's competence was from seven years prior to the crimes here and there was no indication that these records created a *bona fide* doubt as to Petitioner's fitness at the time of trial in this case. *Id.* at 25.

To prevail, Petitioner must show that the "state court's determination that there was no reasonable probability of a different result was unreasonable." *Newman*, 726 F.3d at 928-29. The

Seventh Circuits analysis in *Sturgeon v. Chandler* and district court's analysis in *Searles v. Gaetz* are instructive. 552 F.3d at 613; 2009 WL 1285977, at *9 (N.D. Ill. May 6, 2009). In *Sturgeon,* the Seventh Circuit reviewed whether the Illinois Appellate Court's finding that there was no *bona fide* doubt regarding petitioner's fitness was reasonable. 552 F. 3d at 613. The Seventh Circuit noted that the Illinois Appellate Court balanced the documented history of mental illness, receipt of psychotropic medications, occasional erratic in-court behavior, with the result of court-ordered competency evaluations finding the petitioner competent. *Id.* The state court's reliance on the unanimity of medical experts and lack of clear and convincing evidence contradicting their conclusion was "well within the bounds of permissible differences of opinion." *Id.* Therefore, there was no unreasonable determination of fact. *Id.* Likewise, in *Searles* the district court observed that the Illinois Appellate Court traced the documented history of mental illness, including treatment when petitioner was twelve, a stay at Hargrove Mental Hospital at fourteen, and prior drug use. 2009 WL 1285977, at *9. The state court found petitioner competent because the psychological history related solely to childhood problems and there was no indication they could not understand the proceedings or participate. *Id.* The district court found the state court's decision was not unreasonable. *Id.*

Here, as in *Sturgeon* and *Searles*, the Illinois Appellate Court considered, in detail, the evidence before the trial court, the direct appeals court, and the additional evidence presented on postconviction appeal, including Dr. Klug's report. But, as in those cases, it is not contrary to the clear weight of the record evidence for the *Shields II* court to have weighed the psychiatrist report, family affidavit, school record, childhood medical records, and Social Security record against trial counsel's statements, the trial judge's observations, the history relating solely to childhood problems, Petitioner's refusal to participate in the behavioral examination, and numerous prior

13

dispositions of criminal cases where there was no indication that Petitioner was unfit. 552 F.3d at 613; 2009 WL 1285977, at *9. The postconviction court's balancing of different considerations and record evidence shows reasoned decision-making. Under the highly deferential standard on habeas review, the Illinois Appellate Court's weighing of these competing factors and finding no reasonable probability of a different result is within the bounds of reason.

Petitioner cites *Newman v. Harrington* in support of his contention that the evidence regarding Petitioner's cognitive defects establish *bona fide* doubt. 726 F.3d at 929-35. The Seventh Circuit in *Newman* found there was an ineffective assistance of counsel claim based on the trial attorney's failure to investigate fitness to stand trial. *Id.* at 929. First, the Seventh Circuit found the state court unreasonably applied *Strickland* by ignoring a retroactive clinical evaluation and deeming it "irrelevant." *Id.* at 929. Here, the postconviction court does not deem this report irrelevant but reviewed the report holistically with all the other evidence presented. *Shields II*, R. Ex. 14 at 18-25. Further, the postconviction court did not make an unreasonable determination of facts in light of the state-court record. *Newman*, 726 F.3d at 930. Unlike in *Newman*, the Illinois Appellate Court reviewed the record of the trial court, direct appeal, and additional evidence presented on postconviction appeal and lack of indications regarding fitness issues in numerous cases since the juvenile adjudications. *Shields II*, R. Ex. 14 at 25. Further distinguishing this case from *Newman*, there was the opportunity for a behavioral examination at the trial court where Petitioner could have participated and proven his fitness claim. Even after refusing to cooperate in the initial behavioral examination, the trial judge asked whether Petitioner would sit for the examination a second time, to which Petitioner responded no. *Id.* at 7. While there is evidence pointing to mental impairment, there is also record evidence pointing to Petitioner's ability to participate and comprehend his legal proceedings. *Id.* at 18-25. Moreover, as the Supreme Court

14

has recognized, mental impairment does not always limit a person's ability to stand trial. *Atkins v. Virginia*, 536 U.S. 304, 318 (2002). Here, there is insufficient evidence that the postconviction court's analysis was unreasonable.

### C. Ineffective Assistance of Counsel

This Court must also analyze the postconviction Appellate Court's review of the ineffective assistance of counsel claim subject to the AEDPA. Counsel is presumed competent unless a petitioner proves that: (1) trial counsel's performance was deficient; and (2) this deficient performance substantially prejudiced the petitioner. *Strickland*, 466 U.S. at 687. To establish deficient performance, a petitioner must identify specific acts or omissions of counsel that were "outside the wide range of professionally competent assistance." *Id.* at 690. Moving to prong two, a petitioner must then show that counsel's performance prejudiced their defense or that the errors deprived them of a fair trial. *Newman*, 726 F.3d at 928. To satisfy this element, a petitioner must show there is a reasonable probability but for the error the proceeding results would have been different. *Id.*

Looking at the performance prong of *Strickland*, the postconviction opinion noted that trial counsel had no indication Petitioner was unfit and that he was able to have critical discussions with Petitioner. Under the AEDPA's deferential standard, a party must show that the state court's application of *Strickland* was unreasonable. *Gilbreath*, 21 F.4th at 981. "This is different from asking whether defense counsel's performance fell below the *Strickland* standard." *Id.* When there is no indication that petitioner is mentally deficient, counsel is reasonable in finding that a psychological evaluation would be of little help. *St. Pierre v. Walls*, 297 F.3d 617, 630 (7th Cir. 2002); *Stewart v. Gramley*, 74 F.3d 132, 135 (7th Cir. 1996). In *St. Pierre*, the Seventh Circuit found counsel was not ineffective for failing to further investigate St. Pierre's mental competency

based on counsel's interaction with the petitioner and physician mitigation reports that contained no indication of any psychological problems. *St. Pierre*, 297 F.3d at 630. Here, as in *St. Pierre*, there was initially no evidence of Petitioner's mental impairments. *Id.* As noted by the postconviction court, Petitioner spoke to counsel and participated in the court proceedings and his defense. *Id.*; *Shields II*, R. Ex. 14 at 25. Once evidence of potential mental impairment was furnished to trial counsel, they took the immediate step to investigate and requested a behavioral examination. *Shields II*, R. Ex. 14 at 25. Petitioner was given multiple opportunities to cooperate with the behavioral examination but refused. *Id.* at 7, 25. Counsel, understanding Petitioner's refusal, did not continue to press the matter. *Id.* at 25. Given these circumstances, and like in *St. Pierre*, this Court finds that the postconviction court's application of *Strickland* prong plainly does not fall below the objective standard for reasonableness.

The reviewing court also noted that Petitioner was unable to meet the prejudice prong because there was no *bona fide* doubt at the time of trial as to Petitioner's fitness. *Id.* at 26; *U.S. ex rel Snyder*, 201 F. Supp. 2d at 859-60. When a petitioner alleges ineffective assistance of counsel due to counsel's failure to investigate and request a fitness hearing, the Seventh Circuit directs courts to focus the prejudice prong of the *Strickland* inquiry on whether there is a reasonable probability the petitioner would have been found unfit had the hearing been held. *Newman*, 726 F.3d at 928. Here, *U.S. ex rel Snyder* is persuasive. 201 F. Supp. 2d at 859-60. In that case, the district court found that the Illinois Appellate Court reasonably applied *Strickland* to the facts of the case, including the argument that counsel was ineffective for not seeking a fitness hearing. *Id.* The Illinois Appellate Court had found the petitioner had not exhibited a *bona fide* doubt of fitness as petitioner in that case acted appropriately, did not display confusion with the trial court, and maintained and reiterated his story during sentencing. *Id.* at 860. Thus, there was no prejudice by

16

counsel in failing to request a fitness hearing. Similarly, as detailed above in the due process section of this opinion, there was no *bona fide* doubt as to Petitioner's fitness because he acted appropriately, participated in his defense with trial counsel, the trial court did not see evidence of unfitness, and there were prior dispositions where Petitioner's fitness was not questioned. Importantly, counsel did seek a behavioral examination to determine fitness and Plaintiff refused to participate twice. The *Shields II* court's analysis of the prejudice prong and the finding of no prejudice under these facts is within the bounds of reason.

### D. Certificate of Appealability

As a final matter, pursuant to Rule 11 of the Rules Governing § 2254 Cases, the Court must either issue or deny a certificate of appealability. To obtain a certificate of appealability, the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (cleaned up). As is fully explained above, Petitioner's claims are procedurally defaulted or otherwise without merit under AEDPA standards. Nothing before the Court suggests that jurists of reason would debate the outcome of the Petition or find a reason to encourage Petitioner to proceed further. Accordingly, the Court declines to issue him a certificate of appealability.

## Conclusion

For these reasons, Petitioner's writ of habeas corpus pursuant to 28 U.S.C. § 2254 [1] is denied. The Clerk of the Court is directed to substitute Brittany Greene in her capacity as Warden of Western Illinois Correctional Center as Respondent and dismiss the Attorney General of the State of Illinois. Judgment shall enter in favor of Respondent and against Petitioner.

**SO ORDERED.**

Dated: August 15, 2024

_____
Sunil R. Harjani
United States District Judge